UNITED STATES DISTRICT COURT
EASTERN DIVISION OF NEW YORK

------------------------------------------------------------------------X          Case Number: 05 CV 0596

CHERYL E. FARB AND HAROLD R. NEWMAN,                                                (JS)(ET)

                                        Plaintiffs,


                        -against-



BALDWIN UNION FREE SCHOOL DISTRICT,
BALDWIN UNION FREE SCHOOL DISTRICT BOARD
OF EDUCATION, JAMES C. BROWN, in his official
capacity as Principal and individually, ARLENE
GUERRERO,  in her official capacity as Assistant Principal
and individually, DR. KATHY WEISS, in her official
capacity as Superintendent and individually, and DR. LEE
CHAPMAN, in his former official capacity as Deputy
Superintendent and individually,


                                        Defendants.
------------------------------------------------------------------------X




## MEMORANDUM OF LAW IN OPPOSITION TO
## MOTION TO PARTIALLY DISMISS COMPLAINT




On the brief:
 Fred P. Bennett, Esq.



                                        **FRED P. BENNETT**
                                        Attorney for the Plaintiffs
                                        1800 Walt Whitman Road
                                        Melville, New York 11747
                                        (631) 694-6424

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv - viii

STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    POINT I

        THE COMPLAINT IS SPECIFIC AND THE DEFENDANTS
        HAVE NOT MET THE DISMISSAL STANDARD . . . . . . . . . . . . . 2

    POINT II

        DEFENDANTS' ACTS WERE WILLFUL AND
        INTENTIONAL AND WERE INTENDED TO AND
        DID CAUSE EMOTIONAL DISTRESS . . . . . . . . . . . . . . . . . . . . . . 5

    POINT III

        HOSTILE WORK ENVIRONMENT . . . . . . . . . . . . . . . . . . . . . . . . .7

    POINT IV

        CHERYL WAS DEFAMED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    POINT V

        CHERYL WAS SUBJECT TO RETALIATORY CONDUCT . . . . . 16

    POINT VI

        CIVIL SERVICE LAW PROVIDING FOR ARBITRATION
        DOES NOT APPLY TO ADMINISTRATORS . . . . . . . . . . . . . . . . 18

    POINT VII

        DEFENDANTS' ACTS WERE INTENTIONAL.  THE
        EXCLUSIVITY OF WORKERS' COMPENSATION
        LAW IS NOT APPLICABLE . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . .19

POINT VIII

      SINCE WEISS, AS SUPERINTENDENT, WAS DIRECTLY
      INVOLVED IN AND ORCHESTRATED CHERYL'S
      TORMENT, PUNITIVE DAMAGES SHOULD BE AWARDED . . . .20

POINT IX

      CHERYL'S COMPLAINT ALLEGATIONS ARE MORE
      THAN REASONABLY RELATED TO HER HUMAN
      RIGHTS COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

POINT X

      CHERYL HAS STATED A CLAIM FOR RECOVERY
      UNDER 42 U.S.C. § 1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

POINT XI

      CHERYL WAS IN REAR OF PHYSICAL INJURY AND THE
      CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL
      DISTRESS WAS TIMELY COMMENCED . . . . . . . . . . . . . . . . . . . 22

POINT XII

      THIS COURT SHOULD EXERCISE PENDENT SUPERVISION . . 23

POINT XIII

      LEAVE TO REPLEAD SHOULD BE FREELY GRANTED . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

## TABLE OF AUTHORITIES

Albert v. Carovano
    851 F.2d 561 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

Alfano v. Costello
    294 F.3d 365 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Burlew v. American Mutual Insurance Company
    63 N.Y.2d 412, 482 N.Y.S.2d 720 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Burlington Industries, Inc., v. Ellerth
    524U.S. 742, 118 S.CT. 2257 ... (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,12

Calabrese v. CSC Holdings, Inc.
    283 F.Supp.2d 797 (E.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chamber v. Time Warner, Inc.
    282 F.3d 147 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

Chapelle v. Beacon Communications Corp.
    1993 WL 465312 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Conley v. Gibson
    355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5

Cortec Industries, Inc. v. Sum Holding L.P.
    949 F.2d 42 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

Dana v. Oak Park Marina, Inc.
    230 A.D.2d 204, 660 N.Y.S.2d 906 (4th Dept. 1997) . . . . . . . . . . . . . . . . . . . . . 23

Doe v. R.R. Donnelley & Sons Co.
    442 F.3d 439 , 444 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

Faragher v. City of Boca Raton
    524 U.S. 775, 118 S.Ct. 2275 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Ferrara v. Galluchio
    5 N.Y.2d 16 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Fischer v. Maloney
    43 N.Y.2d 553, 402N.Y.S.2d 991(1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Forsyth v. Federation Employment and Guidance Service
    (2d Cir. 2005) N.Y.L.J.., June 14, 2005, p.20, cols. 3-4 . . . . . . . . . . . . . . . . . . . . 21

Galabya v. N.Y. City Bd. of Edu.
        202 F.3d. 636, 640 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Gerson v. Giorgio Sant'Angelo Collectable, Inc.
        176 Misc.2d 388, 671 N.Y.S.2d 958, (Sup.Ct. N.Y.Co 1998) . . . . . . . . . . . . . . .22

Goldstein v. U.S.
        9 F.Supp.2d 175 (E.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

Gorman v. Holland
        2000 WL 134514 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

H.J., Inc. v. Northwestern Bell Tel. Co.
        492 U.S. 229, 249-50, 109 S.Ct. 2893 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Harris v. City of New York
        186 F.3d 243 (2d Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Harris v. Forklift Sys., Inc.
        510 U.S. 17... (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Hart v. Sullivan
        84 AD2d 865, 445 N.Y.S.2d 40 (3rd Dept. 1981) . . . . . . . . . . . . . . . . . . . . . . .  19

Heindel v. Bowery Savings Bank
        138 A.D.2d 787, 525 N.Y.S.2d 428 (3rd Dept. 1988) . . . . . . . . . . . . . . . . . . . . .  14

Holtz v. Rockefeller & Co
        258 F.3d 62 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Howell v. New York Post
        81 N.Y.2d 115; 596 N.Y.S.2d 250 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Howley v. Town of Stratford
        217 F.3d 141, 154 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Hutton v. Priddy's Auction Galleries, Inc.
        275 F.Supp.2d 428 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . 3

In Re Initial Public Offering Sec Litig,
        241 F.Supp.2d 281, 323 (S.D.N.Y. 2003) (Rule 8(a) . . . . . . . . . . . . . . . . . . . . . 3

Itar-Tass Russian News Agency v. Russian Kurier, Inc.
        140 F.3d 442 (2d Circuit 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Knight v. City of New York
        303 F.Supp.2d 485 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Loughry v. Lincoln First Bank
     67 N.Y.2d 369, 502 N.Y.S.2d 965 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Levine v. Sears Roebuck And Co.
     200 F.Supp.2d 180 (E.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

McDonnell Douglas Corp. v. Green
     411 U.S. 792 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Millington v. Southeastern Elevator Co.
     22 N.Y.2d 498, 293 N.Y.S.2d 305 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Nunez v. A-T Financial Information, Inc.
     957 F.Supp. 438 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

N.X. v. Cabrini Med. Ctr.
     97 N.Y.2d 247, 739 N.Y.S. 254 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Pemrick v. Stracher, 67 F.Supp.
     2d 149 (E.D.N.Y. 199) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Phelps v. Kapnolas
     308 F.3d 180, 184-185 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Pickering v. Board of Education
     391 U.S. 563, 88 S.Ct. 731 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Ponticelli v. Zurich AM Ins. Group
     16 F.Supp.2d 414, 440-441 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Rangolan v. County of Nassau
     370 F.3d 239 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Riviello v. Waldron
     47 N.Y.2d 297, 418 N.Y.S.2d 300 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 14

Sandler v. Marconi Circuit Technology Corp.
     814 F.Supp. 263 (E.D.N.Y.) 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Schwabb v. Town of Babylon
     418 F.3d 106 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Seabrook v. Jacobson
     153 F.2d 70 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Snell v. Suffolk County
    782 F.2d 1094 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . .   22

Steadman v. Sinclair
    223 A.D.2d 392, 393, 636 N.Y.2d 412, 482 N.Y.S.2d 720 (1984) . . . . . . . . .   20

Stewart v. Florence Nightingale Health Center/Carnegie Partners, Inc.
    1999 WL 179373 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

Swierkiewiccz v. Soreme N.A.
    534 U.S. 506, 122 S.Ct. 992 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

Tomka v. Seiler
    66 F.3d 1295 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 20

Torres v. Pisano
    116 F.2f 625 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13, 17

Wait v. Beck's North America, Inc.
    241 F.Supp.2d 172 (N.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

Wanamaker v. Columbian Rope Co.
    108 F.3d 462, 466 (2d cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

Williams v. Greendolf, Inc.
    735 F.Supp. 137 (S.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

<u>OTHER</u>

Civil Service Law §75-b(2)(b)
Civil Service Law §75-b(3)
Education Law §3120
Executive Law §296
Federal Rules of Civil Procedure, Rule 12(b)(6)
Federal Rules of Civil Procedure, Rule 12(c)
Federal Rules of Civil Procedure, Rule 8(a)(2)
Federal Rules of Civil Procedure, Rule 56((c)
General Municipal Law §50-e
General Municipal Law §50-i
Human Rights Law §296(c)
Restatement Torts 2d, §575, Comment b
28 U.S.C. §1367
28 U.S.C. §1367(c)
42 U.S.C.§1981
42 U.S.C.§1981(a)
42 U.S.C.§1983
Worker's Compensation Law §11
Worker's Compensation Law §29

<u>STATEMENT</u>

Plaintiffs submit this Memorandum of Law in opposition to the defendants' motion to dismiss certain causes of action set forth in the complaint.  The salient and cogent facts relating to this action are set forth in the complaint and are amplified in the accompanying affirmation of plaintiffs' counsel, Fred P. Bennett, Esq., dated July 8, 2005.  It is noted that the defendants have withdrawn any claims to Eleventh Amendment immunity (Point III of their memorandum of law) and the arguments and authorities relied by the defendants on this issue,  no longer have any applicability to the motion for partial dismissal.

An analysis of the complaint filed with the New York State Division of Human Rights, a copy of which is annexed as Exhibit "A" to the declaration of Guy M. Allen, Esq., dated March 24, 2005, clearly demonstrates that the complaint and the claims asserted therein follow and reasonably relate to the allegations in the Human Rights complaint.  In fact, for the most part, the allegations in the complaint and the claims asserted therein mirror the allegations before the Division of Human Rights.  The complaint also sets forth that plaintiff Cheryl E. Farb ("Farb") received a right to sue letter permitting the plaintiffs to timely commence this action.  As is set forth in this memorandum of law, the allegations and claims in the complaint are reasonably related to the claims before the State Division of Human Rights.  The claims made in the Division of Human Rights complaint  specifically set forth in paragraph "7" thereof that Cheryl believed that her race and color were a factor in her termination.  In paragraphs "8" and "9" Cheryl specifically sets forth that her gender was a major issue with Brown.  The complaint with the Division of Human Rights also sets forth that Dr. Lee Chapman, a defendant in the action, was part of a cover up to Brown and Guerrero's actions.  In paragraph "15" Cheryl alleges that her termination was retaliatory for her complaint of sexual harassment and hostile

1

work environment.

   With respect to the complaint, the same is specific, detailed and contains dated instances supporting each cause of action.  The claim that the Workers' Compensation Law bars certain causes of action is misplaced since an exception has been carved out of the preclusive effect where allegations are made that the conduct complained of was intentional.

   Cheryl's last day of extreme and outrageous abuse committed by Weiss, Brown and Guerrero was May 14, 2004.  As is set forth in the complaint, a copy of which is annexed as Exhibit "B" to defendants' moving papers, the complaint was filed with the Court on February 2, 2005.  Thus, the statute of limitations defense must fail as a matter of law since the action was timely commenced within the one (1) year period governing intentional torts and defamation.

   Since this is a claim under Title VII and §1981 a notice of claim is not necessary and one did not have to be filed.

## POINT I

### THE COMPLAINT IS SPECIFIC AND THE
### DEFENDANTS HAVE NOT MET THE
### DISMISSAL STANDARD

   In *Harris v. City of New York*, 186 F.3d 243 (2d Cir.1999) the Court discussed the high burden of proof necessary on a motion to dismiss under *Fed.R.Civ.P.* 12(b)(6) and held:

> "Any Rule 12(b)(6) movant for dismissal faces a difficult (thought not insurmountable) hurdle.(citations and internal quotation marks omitted)  On a motion to dismiss under 12(b)(6), the Court must accept as true the factual allegations in the complaint, and draw all favorable inferences in favor of the plaintiff.  The district court should grant such a motion only if, after viewing plaintiff's allegations in this favorable light, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

   It is well settled that the courts in this Circuit follow the Supreme Court determination in *conley v. Gibson,* 335 U.S. 41, 78 S.Ct.99, 2 L.Ed. 2d 80 (1985). There the

2

Court laid down the yardstick to measure dismissals prior to the defendants serving an answer[1] and discovery being conducted.  The Court held that a dismissal should only be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

This Court in *Calabrese v. CSC Holdings, Inc.,* 283 F.Supp.2d 797 (E.D.N.Y. 2003) held that in applying the aforesaid standards that the Court must read the facts alleged in the complaint in the light most favorable to the plaintiff and the plaintiff should be given the most favorable inferences to sustain the pleading.  Furthermore, the complaint statements are to be accepted as true.  The Court referenced *Fed.R.Civ.P.* 8(a)(2) to illustrate the liberal system of pleading in a federal action and cited the oft advanced rule that the appropriate inquiry on a motion to dismiss is not whether the plaintiff will ultimately prevail on the merits but whether the plaintiff is entitled to offer evidence in support of her claims at the time of trial.  "A claimant need only give a statement that gives the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests' *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99 (1957)."

In *Hutton v. Priddy's Auction Galleries, Inc.*, 275 F.Supp.2d 428 (S.D.N.Y. 2003), the Court held that a plaintiff need only plead "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." "A plaintiff need not in other words, plead the elements of a claim.  See, *In Re Initial Public Offering Sec Litig.*, 241 F.Supp.2d 281, 323 (S.D.N.Y. 2003) (Rule 8(a) does not require plaintiffs to plead the legal theory, facts or elements underlying their claim')."

As that Court noted (at the motion to dismiss stage of an action) the issue is not whether a plaintiff will ultimately prevail on the merits but whether or not the plaintiff is entitled

---

[1]The defendants have moved to partially dismiss certain claims prior to interposing an answer and resultant discovery being held.

to offer evidence to support the complaint. "Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." *Phelps v. Kapnolas,* 308 F.3d 180, 184-185 (2d Cir. 2002). The standard on a Rule 12(b)(6) motion is for the Court to merely determine the legal feasability of the complaint and not to weigh the evidence which might ultimately be offered in support of the complaint.

Applying the standard, the particularity alleged in plaintiffs' complaint demonstrates that the defendants have been provided with more than fair and ample notice of the plaintiffs' claim. The allegations are based on actual fact and personal knowledge of the plaintiffs. The allegations are specific, and do not constitute conjecture or surmise and are not conclusory. See also, *Chamber v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)

In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992 (2002) the Court held that in an employment discrimination case a complaint need not include specific facts establishing a prima facie case of discrimination under the framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S.92 (1973) and "instead must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' *Fed. Rule Civ. Proc. 8(a)(2).*"

The Court made it clear that a prima facie case under *McDonnell Douglas Corp. v. Green, supra.*, was an evidentiary standard and not a pleading requirement. Moreover, the Court stated it:

> "never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also applied to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss. For instance, we have rejected the argument that a Title VII complaint requires greater 'particularity,' because this would 'too narrowly constric[t] the role of the pleadings.'(citation of authority omitted) Consequently, the ordinary rules for assessing the efficiency of the complaint apply (authority) and set forth the standard that on a motion to dismiss the function of the court is not to determine whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims set forth in the complaint. Further, Fed.R.Civ.P. Rule (8)(f) provides that this court should construe pleadings to

4

do substantial justice and the Federal Court should not dismiss a complaint unless it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations set forth therein."

In *Conley v. Gibson*, supra., the Court held:

"Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principal that the purpose of pleading is to facilitate a proper decision on the merits."

## POINT II

### DEFENDANTS' ACTS WERE WILFUL AND AND INTENTIONAL AND WERE INTENDED TO AND DID CAUSE EMOTIONAL DISTRESS

With respect to the claim for the intentional infliction of emotional distress, the tort has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress. *Howell v. New York Post.*, 81 N.Y.2d 115, 596 N.Y.S.2d 250 (1993). The courts have found liability where the conduct has been so "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Fischer v. Maloney*, 43 N.Y.2d 553, 402 N.Y.S.2d 991 (1978)

The setting for this action and Cheryl's complaint involve a middle school where the children are young, impressionable and subject to authoritative influences as well as the fact that the highly suggestive comments made by defendant James Brown ("Brown") about the students, especially female students and their mothers as well as to Cheryl, are, to say the least, outrageous, extreme and exceed the bounds of decency in the context of a school setting in a  civilized society. Brown's uttered thoughts about a female student's "camel toe" or his comments to teenage boys about the size of their "bags" utterly exceeds decency, is atrocious and is unacceptable by any

5

reasonable standard.

Furthermore, defendants Kathy Weiss ("Weiss"), Arlene Guerrero ("Guerrero") and Dr. Lee Chapman ("Chapman") were active participants in the conduct that gave rise to the action of intentional infliction of emotional distress. They either actively participated in the egregious conduct that gave rise to Cheryl's harassment or gave their stamp of approval and imprimatur to the conduct by covering up facts that they gathered through their alleged investigations of the allegations. Weiss encouraged Brown's actions and conduct and Chapman knew that defendants Brown and Guerrero were harassing Cheryl and allowed it to continue, choosing instead to participate by covering up the conduct of Brown and Guerrero. As Brown and Guerrero's supervisor, Weiss had an undelegable duty to see that the harassing conduct in the workplace ceased. Instead, she gave Brown and Guerrero carte blanche to continue with the harassing conduct and allowed it to escalate. Brown and Guerrero became the instrumentality of Weiss and Chapman in an all out attempt to seek Cheryl's resignation in direct retaliation for her reporting the harassing conduct, hostile environment and extreme sexual comments. Under the doctrine of respondeat superior, "an employer may be vicariously liable for the tortious acts of its employees only if those acts were committed in furtherance of the employer's business and within the scope of employment." *N.X. v. Cabrini Medical Center.*, 97 N.Y.2d 247, 739 N.Y.S. 254 (2002). The employer need not have foreseen the precise act or the exact manner of injury as long as the general type of conduct may have been reasonably expected. *Riviello v. Waldron*. 47 N.Y.2d 297, 418 N.Y.S.2d 300 (1979). It is interesting to note that Weiss had Brown counseled the previous year due to his harassing, bullying demeanor and his tendency to use highly inappropriate language and remarks.

The employees of Baldwin Union Free Schools are forced to work in fear of Weiss

or suffer the severe implications of questioning her authority.  Unfortunately, the environment that Cheryl was forced to endure became so unhealthy that she was forced to choose between the wrath of Weiss or the then current hostile environment generated by Brown and Guerrero.  When she chose to report the conduct she learned exactly why employees fear Weiss.  Cheryl's co-workers and other employees were told not to have any interaction with her or suffer the consequences.  Cheryl was totally isolated.  For some strange reason, Weiss saw Cheryl's exercise of her rights as a personal affront to her authority and took to a course of conduct directly, using Brown and Guerrero as her weapons, aimed at forcing Cheryl to resign.  The District even went so far as to tell Cheryl that if she resigned quietly they would give her a positive referral. Cheryl opted not to be quiet but rather to bring her allegations and the defendants' abusive conduct to light.

## POINT III

### HOSTILE WORK ENVIRONMENT

In *Schwabb v. Town of Babylon*, 418 F.3d 106 (2d Cir. 1997) a hostile work environment case involving claims under Title VII and Civil Rights violations, the Circuit Court of Appeals reversed the granting of summary judgment and made several cogent and significant determinations in connection with the hostile work environment claim.   Because direct evidence of an employer's discriminatory intent will rarely be found, 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'(authority)".

The Court followed the yardstick to measure when a party can prevail on a hostile work environment claim.  The Court noted that the plaintiff must demonstrate that the work place was "permeated with discriminatory discrimination that was sufficiently severe or pervasive to alter the conditions of [his] work environment, and (2) that specific basis exists for imputing the conduct that created the hostile environment to the employer (authority).  The conduct alleged must be severe

7

and pervasive enough to create an environment that 'would reasonably be perceived, as hostile or abusive.' *Harris v. Forklift Systems, Inc.*, 510 U.S. 17... (1993); See *Doe v. R.R. Donnelley & Sons Co.*, 442 F.3d 439 , 444 (7th Cir. 1994) 'The conduct in question is to be judged by both an objective and a subjective standard." The Court relied upon the Supreme Court's determination in *Harris v. Forklift Systems, Inc., supra.,* and stated that whether an environment is hostile or abusive should only be determined  by looking at all of the circumstances and consider the cumulative effect to obtain a realistic view of the work environment."

As is set forth in plaintiffs' complaint, the sexual comments, the sexual innuendo and the sexual prowess braggadocio of Brown, all of which were condoned by the Baldwin Union Free School District and the Baldwin Union Free School District Board of Education through and by Weiss in her official capacity as Superintendent and by Chapman as Deputy Superintendent demonstrate, given the totality of the circumstances, the number of incidents over a short period of time that the plaintiff, Cheryl, was subject to a pernicious and pervasive hostile work environment.

The Court noted in *Ponticelli v. Zurich AM Ins. Group,* 16 F.Supp.2d 414, 440-441 (S.D.N.Y. 1998) "sexual harassment can give rise to a claim for intentional infliction of emotional distress."  In connection therewith the Court noted that the doctrine of *respondeat  superior* applies and that an employer may only be liable for the tortious acts of an employee that were committed by the employee within the scope of his employment.  Here, plaintiffs' position is that Brown was acting within the scope of his employment at the direction of the Superintendent of Schools, Weiss and Chapman, who had decided to get rid of Cheryl for her claims of gender and racial discrimination.

As is set forth in Cheryl's complaint, the sexual harassment was so severe or pervasive that it altered the conditions of Cheryl's employment and created an abusive working environment.

8

Moreover, the Court in *Ponticelli v. Zurich, supra.*, held:

> "To decide whether a hostile work environment exists, a finder of fact must consider the totality of the circumstances which may include the 'frequency of the discriminatory conduct; it's severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"

The Court specifically noted that when the United States Supreme Court decided *Burlington Industries, Inc., v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275 (1998) the Court "reshaped the standards for determining employer liability" and both called for the identification of the circumstances under which an employer might be "held liable of the Title VII for the acts of a "supervisory employee" that created a hostile work environment constituting employment discrimination by virtue of the sexual harassment of a subordinate. As articulated by the Court:

> "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee."

Here, both Brown and Guerrero were Cheryl's immediate and successively higher authority over her, as was Chapman. Clearly, they were in a position to act on Cheryl's complaints. They utterly failed to do so. In fact, those named defendants conspired among themselves and with others to lie about the circumstances and to present an alleged defense to the complaints. The defendant Baldwin Union Free School District and its Board of Education did not exercise reasonable care to prevent and correct the sexually harassing behavior of Brown and no opportunity was presented to Cheryl to take advantage of any preventive or corrective opportunity.

In *Alfano v. Costello*, 294 F.3d 365 (2d Cir. 2002) the Court specifically noted that a hostile work environment claim can be supported by a single act "if, by itself, it can and does work a transformation of the plaintiff's work place. *See, e.g., Howley v. Town of Stratford,* 217 F.3d 141,

9

154 (2d Cir. 2000).  Cheryl's claim here is supported by her allegations that the conduct of Brown and Guerrero, approved by Chapman and Weiss, was sufficiently continuous and concerted to have altered her working conditions. Cheryl was an intelligent individual who stood up to Brown and Guerrero.  To "break her down," as is set forth in the complaint, they acted in such a manner as to undermine her competence in her job as a Dean of Students and to place her in direct conflict with her co-dean.  As the Court in *Alfano v. Costello*, *supra.*, noted:

> "There is no fixed number of incidents that a plaintiff must endure to establish a hostile work environment; rather we view the circumstances in their totality, examining the nature, severity and frequency of the conduct (citation of authority)."

The Court further noted a triable issue of fact exists where a plaintiff had demonstrated in a two and one half year period that she was subjected to sexually offensive remarks, a disproportionately burdensome work assignment, workplace sabotage and a serious theat of physical harm.  As is set forth in her complaint, Brown embarked upon a course of conduct and pattern of behavior that was intended to sabotage Cheryl's workplace and her role as the Dean of Students and his "getting in her face" and pounding on her desk with his fists clearly created a real threat of physical harm.

In *Wait v. Beck's North America, Inc.*, 241 F.Supp.2d 172 (N.D.N.Y. 2003) the Court held that on a motion to dismiss, the plaintiff does not need to lay bare her proof or demonstrate a prima facie case of a hostile work environment.  "Rather, plaintiff need only 'give [defendant] fair notice of [what] her claims are and the grounds upon which they rest . . . [and] state claims upon which relief could be granted.'"  The Court held that the plaintiff has fulfilled her obligation by setting forth inappropriate comments and efforts to undermine her work.

With respect to individual liability, the Second Circuit in *Tomka v. Seiler*, 66 F.3d 1295 (2d Cir. 1995) held that *Human Rights Law  §296(6)*'s Aider & Abettor Provision, supplies

10

a basis for imposing liability upon individuals who actually participate in the conduct giving rise to the discrimination claim. There, the complaint alleged a continuing course of sexual harassment, unwarranted reprimands, interference with plaintiff's job performance and other conduct that could state a claim for the intentional infliction of emotional distress.  The Court held that the allegations were sufficient to apprise defendants of the nature of the claim, the facts upon which they were based and adequately state a claim upon which relief could be granted.  <u>Under the HRL [Human Rights Law], however, the individual defendants may be sued in their personal capacities for the sexual harassment</u>." (underline added)

   With respect to the issue of intentional of infliction of emotional distress, the Court held:

> "The New York courts appear to require that plaintiffs allege either an unrelenting campaign of day in, day out harassment or that the harassment was accompanied by physical threats, in order to state a cognizable claim for intentional infliction of emotional distress."

   Here, the incidents were not isolated but were continuous and unremitting.  At the pleading stage, Cheryl has set forth what can only be viewed as a campaign to harass her since she would not bend to Brown's and Guerrero's will.  The meanness and mean spirited conduct of Brown and Guerrero is highlighted by the fact that they had a standing side bet to determine who could make Cheryl cry, and become emotionally upset and distressed, the fastest at each and every meeting.  This was part of the day in, day out harassment that she was forced to endure.  Although Brown did not directly physically threaten her, the disparity in their physical makeup and characteristics,[2] accompanied by the fact that Brown would not only yell and scream at Cheryl, but would pound his fists and hands on desk, more than meets the physical threat or harassment element. As is set forth in the complaint, Cheryl was in fear of physical harm based on Brown's actions and

---

[2]Brown is muscular, is at least 6'0" tall, about 200-225 lbs and is physically intimidating. Cheryl is a small woman, approximately 5'1" tall and about 125 lbs.

was intimidated by his conduct.  It is Cheryl's position on this motion and in the action that Brown did not have to actually threaten her; his physically actions of screaming and yelling and pounding on her desk in her face constitute the elements of physical threats.

In *Holtz v. Rockefeller & Co Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62 (2d Cir. 2001)*., Inc.,* 258 F.3d 62 (2d Cir. 2001) the Court ruled that "The question of whether a work environment is sufficiently hostile to violate  Title VII is one of fact (authority)."
This promulgation was based on the fact that the plaintiff found the defendant's conduct offensive and that she had complained to her superiors and had "burst" into tears when describing conduct to the appropriate individual and two years after she left the defendant's employ, she still became physically and emotionally distressed talking about her alleged harassment.

In *Burlington Industries, Inc.v. Ellerth*, 524 U.S. 742, 118 S.CT. 2257 (1998) the Court held:

> "We decide [affirmatively] whether, under Title VII of the Civil Rights Act of 1964, ..., an employee who refused the unwelcome and sexual advances of a supervisor, yet suffers no adverse, tangible job consequences, can recover against the employer without showing the employer is negligent or otherwise at fault for the supervisor's actions."

The Court also noted that:

> "An employer may be liable for both negligent and intentional torts committed by an employee within the scope of his or her employment.  Sexual harassment under Title VII presupposes intentional conduct."

The Court then held that an employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher authority) over the employee.

There are two forms of sexual harassment recognized under Title VII.  One, direct discrimination, also known as the <u>quid</u> <u>pro</u> <u>quo</u> variety and second, hostile work environment

12

harassment.  The hostile workplace harassment, to be actionable, must be sufficiently severe or pervasive to alter the conditions of the victims employment and to create an abusive working environment.

The Court held in *Burlington v. Ellerth, supra.*:

"The sufficiency of a hostile work environment claims, subject to both substantive and objective measurement: the plaintiff must demonstrate that she personally considered the environment hostile, and that the environment rose to some objective level of hostility.  *See, Harris v. Forklift Sys. Inc.*, 510 U.S. 17... (1993); *See also, Richardson v. New York State Dep't of Correction* Serv., 180 F.3d 426, 436 (2nd Cir. 1999) (focusing objective evaluation on 'whether a reasonable person *who is the target to discrimination* would find the working conditions' sufficiently severe or pervasive (emphasis added))."

The Court went on to recite that "Courts look at all circumstances to ascertain whether an environment is sufficiently hostile or abusive to support a claim (authority)."

The Court further ruled that determining whether a workplace is severe or pervasive to be actionable depends upon the totality of the circumstances.  Factors to be considered may include the frequency of the discriminatory conduct; it's severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.  The effect on the employee's psychological well-being is of course relevant to determining whether the plaintiff actually found the environment abusive.

In *Torres v. Pisano*, 116 F.2d 625 (2d Cir. 1997) the Court held "'The fact that many of [the defendant's] statements were not made in [plaintiff's] presence is, in this case, of no matter; an employee that knows that her boss is saying this of this sort behind her back may reasonably find her working environment hostile.'"

In one of the leading cases on the issue of respondeat superior, the Court of Appeals in *Riviello v. Waldron*, 47 N.Y.2d 297, 418 N.Y.S.2d 300 (1979) analyzed the respondeat superior position and initially noted:

"We first note what is hornbook law: the doctrine of *respondeat superior* renders a master vicariously liable for tort committed by his servant while acting within the scope of his employment (authority)."

The Court also noted that an employer is not necessarily excused because his employees, acting in furtherance of the employer's interests, exhibit human failings and/or perform negligently or otherwise in an unauthorized manner. "Instead, the test has come to be 'whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what regard of instructions' (authority)."

The Court also made it clear that the termination of whether a particular act was within the scope of the servant's employment "is so heavily dependent on factual considerations, the question is ordinarily one for the jury (citation of supporting authority)". The Court then set forth the factors to be considered whether the conduct of an employee falls within the permissible ambit of the employment. Factors to be considered are: the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and the specific act was one that the employer could reasonably have anticipated. Upon an analysis of the factors, plaintiffs' complaint fits squarely within the test laid down by the Court and on a motion to dismiss, the plaintiffs have spelled out in their complaint that the actions of Brown and Guerrero, acting under their authority, direct or implied, by Weiss bind the defendant school district.

With respect to the issue of foreseeability, the Court noted that "general rather than specific foreseeability has carried the day even in some cases where employees deviated from their assigned tasks." The Court further noted that: "Indeed, where the element of general foreseeability exists, even intentional tort situations have been found to fall within the scope of employment

(authority).

        *Heindel v. Bowery Savings Bank*, 138 A.D.2d 787, 525 N.Y.S.2d 428 (3rd Dept. 1988) is clearly distinguishable because the Court there held that the acts of the defendant's employee were not in any way incidental to the furtherance of his employers interests and were committed for personal motives and were a complete departure from his normal duties.  The Court did hold that employer can be held vicariously liable for the torts of an employee committed in the course of the employer's work.  "Even if the acts are done irregularly or with disregard of instruction" citing *Riviello v. Waldron*, 47 N.Y.2d 297 (19 ).

<u>**POINT IV**</u>

<u>CHERYL WAS DEFAMED</u>

        The Court in *Steward v. Florence Nightingale Health Center*, 1999 WL 179373 (S.D.N.Y. 1999) set forth the elements for a claim for defamation.  Those elements are (a) a false defamatory statement of fact; (b) regarding the plaintiff; (c) publication to a third party; and (d) resulting injury to the plaintiff.  Based on Cheryl's complaint,  it is respectfully submitted that Cheryl has met each and every element necessary to sustain a cause of action for defamation. Clearly Cheryl has been injured by the defendants' conduct.  The false and defamatory statements of fact were, in fact, published by the slanderous outbursts of the defendant Brown.  They were aimed at and were directed to Cheryl.  The statements about her performance were false and were statements of alleged fact.  Even if it is assumed for purposes of this argument only that the defendants are entitled to a qualified privilege, it is respectfully submitted that the outrageous conduct of Brown and Guerrero demonstrate that they acted with malice; their statements were outside the scope of the qualified privilege; and that they had actual knowledge of the fact that their statements were false or they were uttered with a reckless disregard for their truth.  As the Court

15

held: "The decision as to whether a defendant has abused a qualified privilege is normally for the jury. *See*, RESTATEMENT §619(1)." The Court defined malice to mean, based on the common law, a statement made for improper purposes and a reckless disregard for the truth.

In order to satisfy the malice requirement, a plaintiff must demonstrate that the communication involved is consistent with the desire to injure the targeted individual to justify submitting the question of malice to the jury. Malice has also been defined as personal spite or ill will, or culpable recklessness or negligence and may be inferred from a defendant's use of expressions beyond those necessary for the purpose of the privileged communications or from a statement that is so extravagant in its denunciations or vituperative in its character as to warrant an inference of malice.

In *Nunez v. A-T Financial Information, Inc.,* 957 F.Supp. 438 (S.D.N.Y. 1997) the court discussed the issue of defamation and slander *per se* as well as the intentional infliction of emotional distress. Here, Cheryl claims that the defamation was slander and libel *per se* as the defamatory statements injured her in her profession. In discussing the issue of slander *per se*, the Court noted that there are four cases evidencing slander *per se*. Three of the situations do not apply. One, that the slander tends to injure plaintiff in the conduct of her trade, business or profession applies in this case. There is little question that Cheryl was injured in the conduct of her profession by Brown's comments. The Court then held: "In assessing a claim of slander *per se*, the court must construe the allegedly defamatory statement according to its plain meaning. *Sandler v. Marconi Circuit Technology Corp.*, 814 F.Supp. 263 (E.D.N.Y. 1993).

## POINT V

### CHERYL WAS SUBJECT TO RETALIATORY CONDUCT

In *Knight v. City of New York,* 303 F.Supp.2d 485 (S.D.N.Y. 2004) the Court discussed

16

retaliation claims brought pursuant to Title VII.  The Court held:

> "To establish a *prima facie* case of retaliation, Knight must demonstrate that '(1) [he] was engaged in protective activity; (2) the employer was aware of that activity; (3) [Knight] suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action.' *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 66, (2d Cir. 1998); other authority."

The Court defined protective activity to mean action taken to protest or oppose statutorily prohibited discrimination and in formal as well as informal complaints, constitutes protective authority.  The Court also held:

> "Moreover, to establish that his activity is protected, Knight 'did not have to prove the merit of his underlying discrimination claim, but only that he was acting under a good faith reasonable belief that a violation existed.' … *See also, Grant v. Hazelett Strip - Casting Corp.*, 880 F.2d 1564, 1659 (2d Cir. 1989)."

The Court then defined an adverse employment action as one that "'materially adverse change in the terms and conditions of employment.' *Galabya v. N.Y. City Bd. of Edu.*, 202 F.3d. 636, 640 (2d Cir. 2000).  The court then held that to be materially adverse, a change in working conditions must be more disruptive than mere inconvenience or an alteration of job responsibilities.  Relying on *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997) the court also noted that less flagrant reprisals by employers may be adverse and that an adverse employment action does not depend upon job termination or reduced wages and benefits.  The Court also held that disciplinary memoranda and evaluations are adverse employment actions only if they effect ultimate employment decisions, such as promotions, wages or terminations.  Citing *Torres v. Pisano*, *supra*., the Court held that to prevail on a hostile work environment claim under Title VII, the plaintiff had to show that his workplace, during the relevant time frame, was permeated with discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive to alter the

17

terms of his employment.  Cheryl demonstrated that the environment was objectively hostile or abusive and she subjectively perceived the environment to have been abusive.  Moreover, Cheryl demonstrated that a specific basis exists for reputing the conduct that created the hostile work environment.  Here, we have sexual discrimination as well as motivation based on retaliation for filing the complaint against Brown.  *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 731 notwithstanding, Cheryl spoke out, not as an employee on matters of personal interest, but to demonstrate that the principal of the school made statements about young children and their parents and she did so as a citizen on matters of public concern.  Brown's utterances about young female students and their parents, were matters of public concern and her complaints concerning his egregious statements and conduct were protected and involved a public interest.

## POINT VI

### CIVIL SERVICE LAW PROVIDING FOR ARBITRATION
### DOES NOT APPLY TO ADMINISTRATORS

The school district defendants and their attorneys, familiar with the collective bargaining agreement that they negotiated and drafted, are aware of the fact that binding arbitration is not available for administrators such as Cheryl and therefore Civil Service Law § 75-b(3) simply is not applicable.

Cheryl did all that was humanly possible in an attempt to have the District rectify the situation.  Cheryl, after much personal anguish and sole searching, realized that she could no longer be silent; that the harassment was taking its toll on her mental and physical health as well as her personal and professional relationships.  Cheryl was the student-to-student sexual harassment officer, responsible for the investigation of incidents and education of students regarding sexual harassment.  She felt like a hypocrite, telling students that no one has the right to sexually harass them and at the same time not reporting that she was  being the direct target of such harassment.

18

Finally, in December, 2004, Cheryl informed the defendants of the violations complained of and gave them every opportunity to take "appropriate action" as required by Civil Service Law §75-b(2)(b).   The defendants failed to take appropriate action, choosing instead to take highly inappropriate actions and retaliated against Cheryl.  The defendants (1) disclosed the fact that Cheryl had filed a complaint; (2) disclosed the presence of an investigation regarding her complaint; (3) the nature of the complaint and investigation; (4) the persons to be interviewed; (5) the questions to be asked of those interviewed; (6) the intimidation of witnesses to the incidents that she complained of; (7) the cover up of facts that tended to substantiate her allegations; and (8) the total harassment and intimidation of Cheryl in an attempt to force her resignation.  All of the defendants' arguments under Civil Service Law §75-b must fail.

## POINT VII

### DEFENDANTS' ACTS WERE INTENTIONAL.
### THE EXCLUSIVITY OF WORKER'S COMPENSATION
### LAW IS NOT APPLICABLE

*Hart v. Sullivan*, 84 A.D.2d 865, 445 N.Y.S.2d 40 (3rd Dept. 1981)dealt with a number of issues including the exclusive provision under the Workers' Compensation Law.  The Court noted that there is an exception to the exclusivity of the Workers' Compensation Law by intentional tortious or willful acts against a plaintiff.  "Willfulness on the part of the employer is a prerequisite to a deprivation to the exemption afforded by the Workers' Compensation Law."

In *Gorman v. Holland*, 2000 WL 134514 (S.D.N.Y. 2000) the Court discussed the Worker's Compensation Law as the exclusive remedy for physical and emotional injuries caused by "non-intentional acts arising in the course of employment."  Here, Cheryl's complaint, when viewed in the light most favorable to the plaintiffs, demonstrates that the acts of Brown and Guerrero  and not acted upon by Weiss, were intentional acts arising in the course of employment.  The Court also

19

discussed the elements necessary to sustain a hostile work environment based on sex and held:

"To be actionable, 'the sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find  hostile or abusive, and one that the victim in fact did perceive to be so' (citation of authority)."  The Court set forth five factors to support such a claim: the frequency of the discriminatory conduct; the severity of the discriminatory conduct; whether the conduct was physically threatening or humiliating or a 'mere offensive utterance'; whether the conduct unreasonably interfered with the plaintiff's work; and what psychological harm, if any, resulted.  The Court also noted that an individual may be liable for participation in acts of discrimination based on New York Human Rights Law §296(6) where that person aids, abets, incites, compels or coerces any of the acts forbidden under that law or attempts to do so. In interpreting this section of the statute, the Second `Circuit has determined that 'a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable' under the NIHRL... .  The First Department has also adopted this interpretation. *See, Steadman v. Sinclair*, 223 A.D.2d 392, 393, 636 N.Y.S.2d 325, 326 (1st Dep't. 1996 and other authority) and *Tomka v. Seiler*, 66 F.3d 1295 (2d Cir.1995).

*Burlew v. American Mutual Insurance Company*, 63 N.Y.2d 412, 482 N.Y.S.2d 720 (1984) stands for the proposition that intentional injuries are not covered by the Workers' Compensation Law and an employee may bring a tort action for such harm against the offending employer or insurer.

*Chapelle v. Beacon Communications Corp.*, 1993 WL 465312 (S.D.N.Y. 1993) sets forth that an exception to the Worker's Compensation Law arises when an intentional tort is set forth or a willful act is claimed.  Willfulness on the part of the employer is a prerequisite to the exception carved out of the statute.

**POINT VIII**

SINCE WEISS, AS SUPERINTENDENT, WAS DIRECTLY
INVOLVED IN AND ORCHESTRATED CHERYL'S
<u>TORMENT, PUNITIVE DAMAGES SHOULD BE AWARDED</u>

In *Loughry v. Lincoln First Bank*, 67 N.Y.2d 369, 502 N.Y.S.2d 965 (1986), a case dealing

with the issues of punitive damages, the Court held that punitive damages cannot be assessed against

an employer in the absence of its complicity with respect to false statements maliciously published

by its employees in the course of employment.  Where relevant here, the Court held that:

> "punitive damages can be imposed on an employer for the intentional
> wrongdoing of its employees only where management has authorized,
> participated in, consented to or ratified the conduct giving rise to such damages
> or deliberately retained the unfit servant (authority).  Put another way, this
> 'complicity rule' - - in essence the position adopted by the Restatement (2d)
> of Torts §909 and the Restatement (2d) of Agency §271c - - results in
> employer liability for punitive damages only when a superior officer in the
> course of employment orders, participates in or ratifies outrageous conduct
> (authority)."

**POINT IX**

CHERYL'S COMPLAINT ALLEGATIONS ARE MORE THAN
<u>REASONABLY RELATED TO HER HUMAN RIGHTS COMPLAINT</u>

In *Pemrick v. Stracher*, 67 F.Supp.2d 149 (E.D.N.Y. 199) this Court held:

> "As a general proposition, a plaintiff's claims that are not set forth explicitly
> in an EEOC charge, but which are reasonably related to claims made in the
> charge, may be set forth in a subsequent action in the federal court. *Butts v.
> City of New York Dep't Hous. Preservation and Dev.*, 990 F.2d 1397, 1402 (2d
> Cir. 1993)".

"'Reasonably related' means that despite the claimant's having failed to specify the precise charge,

the EEOC likely would have investigated the conduct complained of anyway."

In *Francis v. City of New York*, 235 F.3d 763 (2d Cir. 2000) the Court held:

> "We hold that presentation of a Title VII claim to the EEOC 'is not a
> jurisdictional [prerequisite], but only a precondition to bringing the Title VII
> action that can be waived by the parties or the court (authority)."

21

## POINT X

### CHERYL HAS STATED A CLAIM FOR
### RECOVERY UNDER 42 U.S.C. 1981

*Albert v. Carovano*, 851 F.2d 561 (2d Cir. 1988) dealt in part with a §1981 claim. A § 1981 claim invokes the Fourteenth Amendment equal protection and due process clauses and is viewed as prohibiting certain forms of discrimination based on race and applies to acts of private discrimination.

In *Williams v. Greendolf, Inc.*, 735 F.Supp. 137 (S.D.N.Y. 1990) the Court held that to succeed under §1981 (42 U.S.C.§1981 for employment discrimination) the plaintiffs must allege or prove that the defendant's actions were purposefully discriminatory and racially motivated. In Cheryl's complaint the statements concerning the discrimination were detailed and specific and rise far above any naked allegations or assertions upon which the defendants claim that the complaint should be dismissed. Defendants' argument in this regard is made with tongue in cheek and that branch of the application should be denied in all respects. The Court also noted that it would be difficult to plead with specificity and particularity the state of the defendants' minds and that "The real question is whether the complaint alleges facts sufficient to raise an inference of racial motivation."

## POINT XI

### CHERYL WAS IN FEAR OF PHYSICAL INJURY AND THE CLAIM
### FOR NEGLIGENT EMOTIONAL DISTRESS WAS TIMELY COMMENCED

In *Gerson v. Giorgio Sant'Angelo Collectable, Inc.*, 176 Misc.2d 388, 671 N.Y.S.2d 958, (Sup.Ct. N.Y.Co 1998) the Court relying upon *Ferrara v. Galluchio*, 5 N.Y.2d 16 (1958 ) held that "freedom from mental disturbance is a protected interest in the State..." and the Court held that physical injury is not a necessary element to the cause of action for negligent infliction of emotional

distress.  "A rule has developed requiring at least a threat of such impact or injury before a claim may be maintained.  Therefore, '[t]he circumstances under which recovery may be had for purely emotional harm are extremely limited and thus, a cause of action seeking such recovery must generally be premised upon a breach of a duty owed directly to the plaintiff which either endangered the plaintiff's physical safety or cause the plaintiff fear for his or her own physical safety' (authority).  Courts have found their index of reliability in requiring that the alleged conduct 'unreasonably endanger' a plaintiff's physical safety'(authority)."

The plaintiff there, alleged sexual harassment and discrimination in the workplace, set forth that the employer had a duty to take reasonable steps to remedy the harassment (relying on *Snell v. Suffolk County*, 782 F.2d 1094 (2d Cir. 1986)) and  failed to allege that she was in fear for physical injury resulting from defendant's failure to end the harassment.  The Court noted that sexual harassment has more to do with the abusive exercise of one's power over another than is does with sex.  Here, Cheryl's perception of Brown's conduct put her in fear and to feel threatened of physical harm.

*Dana v. Oak Park Marina, Inc.*, 230 A.D.2d 204, 660 N.Y.S.2d 906 (4th Dept. 1997) provides, where relevant, that:

> "A plaintiff who has not suffered any physical injury may recover damages for mental or emotional distress if she can establish that defendant owed a duty to her and that a breach of duty directly resulted in mental or emotional harm (authority).  Even absent proof that defendant owed a general duty to plaintiff, New York has permitted recovery under certain circumstances involving gross negligence involving a third party."

The court also noted that a cause of action for reckless infliction of emotional distress is recognized in New York State based on the formulation of §46(1) of the Restatement (Second) of Torts.

## POINT XII

<u>THIS COURT SHOULD EXERCISE PENDENT JURISDICTION</u>

Since the enactment of *28 U.S.C. §1367*, the Second Circuit has taken a liberal approach to deciding questions of the exercise of supplemental jurisdiction, provided that there is present within a given controversy a predicate basis of jurisdiction. *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442 (2d Circuit 1998).  The Second Circuit has ruled that §1367 vests "federal courts jurisdiction to decide claims over which they would not otherwise have jurisdiction, if those claims are so related to claims over which they do have jurisdiction that the claims form part of the same case or controversy." *Seabrook v. Jacobson*, 153 F.2d 70 (2d Cir. 1998) Additionally, the Second Circuit has held that a discretionary rejection of supplemental jurisdiction is proper "only if founded upon an enumerated category of subsection 1367(c)." *Itar-Tass v. Russian Kurier, supra*.  Parenthetically, loss of consortium is allowable as a derivative claim to any of the pendent state claims. *Levine v. Sears Roebuck And Co.*, 200 F.Supp.2d 180 (E.D.N.Y. 2002)

It is a long standing principle of law that the concept of consortium includes not only the loss of support or services, but also such elements as love, companionship, affection, society, sexual relations, solace and much more. *Millington v. Southeastern Elevator Co.*, 22 N.Y.2d 498, 293 N.Y.S.2d 305 (1968).  "'The essence of recovery for loss of services is to compensate for the loss of such elements as 'love, companionship, affection, society, sexual relations, solace and more'." *Rangolan v. County of Nassau*, 370 F.3d 239 (2d Cir. 2004).  Plaintiffs are entitled to recover fair and just compensation for any injuries caused by defendants including compensatory damages, past and future pain and suffering, past and future medical, hospital, nursing and therapy expenses, and loss of consortium. *Goldstein v. U.S.*, 9 F.Supp.2d 175 (E.D.N.Y. 1998)

24

**POINT XIII**

LEAVE TO REPLEAD
SHOULD BE FREELY GRANTED

If this Court determines in its sound discretion that the complaint has not met the

pleadings requirements, plaintiffs seek leave to replead.  In this vein, the Court's attention is

respectfully referred to *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991)

where the Court held:

> "We begin with a statement of the rule. It is the general practice upon granting
> a motion to dismiss to allow leave to replead.  *See, e.g. Ronzani v. Sanofi S.A.*,
> 899 F.2d 195, 198 (2d Cir. 1990 and other authority).  Although leave to
> replead is within the discretion of the district court, refusal to grant it without
> any justifying reason is an abuse of discretion (authority)."

CONCLUSION

It is respectfully submitted that by virtue of all of the above, the relief sought by the

defendants be denied in all respects and plaintiffs have such other and further relief as to the Court

may seem just and proper.  In the event the Court determines that some or all of plaintiffs' claims

and causes of action, which are the subject of the motion to dismiss, do not meet the standard or

elements for such claims, plaintiffs respectfully request leave to replead.

Dated: Melville, New York
        July 8, 2005

                                    Respectfully submitted,

                                    _____
                                     Fred P. Bennett
                                      (FB-9059)
                                    1800 Walt Whitman Road
                                    Melville, New York 11747
                                    (631) 694-6424