UNITED STATES DISTRICT COURT
EASTERN DIVISION OF NEW YORK
------------------------------------------------------------------------X        Case Number: 05 CV 0596
CHERYL E. FARB AND HAROLD R. NEWMAN,                                              (JS)(ETB))

                                        Plaintiffs,

                                                                                 AMENDED COMPLAINT
                    -against-
                                                                                 PLAINTIFFS' DEMAND A
                                                                                 TRIAL  BY JURY
BALDWIN UNION FREE SCHOOL DISTRICT,
BALDWIN UNION FREE SCHOOL DISTRICT BOARD
OF EDUCATION, JAMES C. BROWN, in his official
capacity as Principal and individually, ARLENE
GUERRERO,  in her official capacity as Assistant Principal
and individually, DR. KATHY WEISS in her official
capacity as Superintendent and individually, and DR. LEE
CHAPMAN, in his former official capacity as
Deputy Superintendent and individually,

                                        Defendants.
------------------------------------------------------------------------X

        Plaintiffs Cheryl E. Farb and Harold R. Newman, by their attorney, Fred P. Bennett, Esq.,

for their amended complaint, respectfully allege:

                                        **JURISDICTION**

        1.   This is an action for damages brought pursuant to Title VII of the Civil Rights Act of

1964 ("Title VII"), 42 U.S.C.§2000e et.seq., 42 U.S.C.§§1981 and 1983 and the United States

Constitution, Fourteenth Amendment.

        2.   This court has subject matter jurisdiction based on Title VII and the court may exercise

supplemental and pendent jurisdiction of all related state-law based claims.

                                **CONDITIONS PRECEDENT TO SUIT**

        3.   Plaintiffs have complied with all the prerequisites to an action under Title VII:

                (a) On or about April 29, 2004, the plaintiff, Cheryl E. Farb ("Farb") timely

                                            -1-

filed a charge for the discrimination alleged in this complaint with the New York State Division of Human Rights;

(b) On or about December 20, 2004, the Equal Employment Opportunity Commission ("EEOC") notified the plaintiffs of the termination of any further processing of the charge of employment discrimination and gave the plaintiffs a right-to-sue letter, permitting plaintiffs to institute this action within 90 days of the receipt of the notification; and

(c) The plaintiffs filed this action within 90 days of the receipt of the Notice of Right to Sue.

### ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

4.   At all material times herein mentioned, Farb, a white female, and Harold R. Newman ("Newman") were and still are lawfully husband and wife and were and still are citizens of the United States and were at the time of the commencement of the action residents of the County of Nassau, State of New York.

5.   At all material times herein mentioned, the defendant Baldwin Union Free School District ("District") was and still is an educational body organized and existing under and by virtue of the laws of the State of New York and is governed by the State of New York and employs more than 15 employees and is comprised of all public schools within the Public School System of Baldwin, New York and maintains offices for the transaction of business in the County of Nassau, State of New York.

6.   At all material times herein mentioned, the defendant Baldwin Union Free School District Board of Education ("Board of Education") was and still is a duly constituted administrative

body vested by the State of New York with the power and authority to make and enforce rules and regulations and to appoint and hire employees for the administration, management, control and security of public schools within the Public School System of Baldwin, New York.

7.   At all material times herein mentioned, the defendant James Brown ("Brown") was and still is Principal of Baldwin Middle School and, upon information and belief, was and still is a citizen of the United States and a resident of the County of Nassau, State of New York.

8.   At all material times herein mentioned, the defendant Arlene Guerro ("Guerrero") was and still is one of the Assistant Principals in the Baldwin Middle School and, upon information and belief, was and still is a citizen of the United States and a resident of the County of Nassau, State of New York.

9.   At all material times herein mentioned, the defendant Dr. Kathy Weiss ("Weiss") was and still is the Superintendent of  the Baldwin Union Free School District  and, upon information and belief, was and still is a citizen of the United States and a resident of the County of Nassau, State of New York.

10.   At all material times herein mentioned, the defendant Dr. Lee Chapman ("Chapman"), was the Deputy Superintendent of the Baldwin Union Free School District, having retired on or about July 1, 2004 and, upon information and belief, was and still is a citizen of the United States and a resident of the County of Nassau, State of New York.

11.   At all material times herein mentioned, Farb was employed by the District as a Dean of Students for the Baldwin Middle School in Baldwin, New York.

12.   At all material times herein mentioned, the District was and still is a "public employer" as defined by the New York Civil Service Law, Section 75-b, which exercises governmental power

-3-

under the laws of the State of New York.

13.   At all material times herein mentioned, Farb was a "public employee," as defined under the New York Civil Service Law, Section 75-b, and had served in such capacity with the District for a period of approximately two years.

14.   On or about January 5, 2004, Farb filed a Sexual Harassment Complaint with the District against Brown.  The complaint, dated December 19, 2003, set forth a summary of sixteen (16) allegations that resulted in the sexual harassment of Farb and which created a hostile work environment.  The complaint was amended with one additional count on or about January 27, 2004.

15.   On or about February 10, 2004, Chapman provided Farb with a memorandum entitled, "Findings on Your Complaint Dated December 19, 2003."  In this memorandum, Chapman denied the majority of Farb's allegations by stating that they were unsubstantiated and ultimately concluded that he found no evidence that Brown created a hostile work environment, discriminated and/or sexually harassed Farb.

16.   On or about April 23, 2004, Farb was informed that her employment was to be terminated by the District and the Board of Education, effective as of the end of the school year in June, 2004.

17.   Farb's termination was a tangible, adverse employment action that was based on her race and gender.

18.   Farb was subjected to a continued and ongoing course of conduct and pattern of both sexual and racial harassment throughout the course of her employment that resulted in a hostile work environment.

19.  On or about June 6, 2003, Brown stated to Farb that she was "a difficult woman and he

is very attracted to difficult women." While Farb and Brown were the only parties present to this conversation, Brown repeated this conversation on or about October 29, 2003 in the presence of Guerrero. During this second occurrence, Brown included Guerrero in his classification of "difficult women that he is attracted to."

20.    On or about October 20, 2003, in an Academic Cabinet meeting at Baldwin Middle School, and in the presence of Farb, Brown engaged in a conversation lasting approximately thirty minutes about how prolific he was, as a young man, in snapping a girl's rear bra strap and opening it up with one quick hand motion. Laraine Gegerson, a faculty member present for the conversation asked Brown "Did that make you feel more of a man?" Brown replied "Yes. I still can do it today and it still makes me feel like more of a man." Also present for this conversation were faculty members Guerrero, Linda Anthony, Denise Merchant, Melissa Mauricci, Helene Goldberg, Sandra Young and James Gorecki.

21.    On or about October 20, 2003, while discussing the resignation of another administrative employee, Linda Anthony, Brown stated to Farb, in sum and substance, that he felt sorry for her [Farb] because "there are no more white administrators and there is no one left like you [Farb] to talk to."

22.    On or about October 20, 2003, after making the comment referenced in paragraph 21, Brown went on to inform Farb that he and Guerrero were hired because they were the most qualified people for the positions, but that he had to hire Farb, Alvis Brown (the other Dean of Students at Baldwin Middle School), and Linda Anthony based on race. Brown informed Farb that he was told to do so by the directive of Weiss.

23.    On or about October 22, 2003, while discussing an investigation that Farb was

-5-

undertaking, Brown stated to Farb that, "I need you to make the investigation as tight as a virgin's, well, you know what is tight on a virgin."

24.  On or about November 5, 2003, while Farb was present in Brown's office, Brown asked Farb to witness several telephone conversations that he was about to have with parents regarding an incident that had taken place at the school.  After Brown concluded his conversation with one student's mother, he stated to Farb "She's so disgusting.  How could her husband ever go to bed and sleep with that woman?  She's just a 'clam digger.'"[1]  Avis Brown was also present for this conversation.  The statements by Brown were highly offensive, inappropriate and insensitive and caused Farb to become upset and extremely uncomfortable based on the fact that Brown, as the school principal, was talking about the parents of a student at the school.

25.   Brown repeated the aforementioned derogatory and racist remark, "clam digger," on a number of occasions in Farb's presence.  Guerrero, Linda Anthony and Alvis Brown have been present on some of these occasions and have heard Brown using this term.

26.   On or about November 12, 2003. Farb informed Assistant Superintendent Jeffrey Hollman of the November  5, 2003 "clam digger" incident and that she had other concerns of a greater severity related to Brown that she wished to discuss with him.

27.   Shortly after Farb spoke with Mr. Hollman on November 12, 2003, Brown summoned Farb to his office and questioned her intensely as to the discussion that she had with Mr. Hollman and whether she, Farb, had informed Mr. Hollman about his comments, including but not limited

---

[1]The term "clam digger" is a derogatory and racist remark used to refer to lower-class white adults with implications on those persons' social and economic status.  The term finds its history in past decades where some of the poorer members of the community made their livelihood from digging for clams in the harbor.

to the "clam digger" reference.  Farb was intimidated and in fear of Brown and was led to believe that Brown's intended purpose was to thwart any investigation about Brown's comments as aforesaid.

28.   Brown further called Farb on the telephone at home one evening.  During this call Brown proceeded to further interrogate Farb as to her dealings with Jeffrey Hollman.  Brown demanded that Farb give him a copy of any reports that she gave to Mr. Hollman.  In so stating, Brown demanded that as Farb's supervisor, he had an inherent entitlement to anything that Farb gave to anyone.

29.   On one occasion, while looking at a female eighth grade student and her clothing, Brown stated, "The girl's pants are so tight you can see her 'camel toe.'" Farb was present for this statement, as well as Alvis Brown, who began to laugh along with Brown.  Confused by this remark, Farb questioned the meaning of the statement.  James Brown then went on to state that "camel toe" was a reference to a female's genitalia.  Alvis Brown then proceeded to use his hand to show Farb wheat "camel toe" looks like.

30.   On or about November 18, 2003, while discussing Farb's obedience to his authority, Brown stated that he believed that it may be a "male thing. ... resistance to males, rooted issues with men regarding authority and power."  Brown went on to state to Farb that, "I am not asking you to be my wife or biblically obedient to me."  Guerrero was present for this conversation.  During this meeting, Farb informed Brown and Guerrero that she was uncomfortable with many of their conversations.

31.   On or about November 18, 2003, Farb received a threat from a parent during the course of a telephone conversation.  While advising Farb of the proper way to handle the incident, Brown

stated to Farb: "You're a woman.  You know how to act.  No less, you're a married woman.  There are times when you know how to not be as forthcoming, as brutally honest, as you may feel.  You live with another person. ... Harry (Farb's husband and co-plaintiff in this action) continues to pick you up all smiling and happy.   I'm not saying be kissy, lovey-dovey to [the male parent] like that; just use the skills I know you have."

32.   On at least two separate occasions, Brown, in the presence of Guerrero, stated that he and Guerrero have a problem with Farb and a problem trusting her because she neither laughed at, nor participated in their jokes, which Farb considered to be sophomoric, insulting and derogatory.

33.   On at least one occasion, Brown publicly humiliated Farb by loudly yelling and berating her on a public walkie-talkie throughout the school and for parents, students and teachers to hear.

34.   On a number of occasions, Brown entered into Farb's office and proceeded to violently slam the door and pound his fists on her desk.  Brown then proceeded to yell at Farb in such a loud and forceful tone that he could be heard from outside the office.  Brown has engaged in similar conduct in his own office, oftentimes violently pounding his hands on his desk and screaming at Farb.  Such behavior put Farb in fear of imminent physical harm.

35.   On a number of occasions, when a matter or incident became accountable at the District Office level, Brown informed Farb that she was "taking the fall" for his or other employees' mistakes.  One such example involved the resignation of another faculty member, Mr. James Lynch.  Farb was made to believe by Brown that she was going to be blamed for things she had nothing to do with and that Brown was looking to make her the scapegoat for his actions and culpability.

36.   On or about June 9, 2003, Farb placed a telephone call to Richard Miskiewicz, Farb's union president and Assistant Principal at Baldwin Senior High School.  Farb informed Mr.

Miskiewicz that she had serious concerns with her working relationship with Brown and that she hoped that he could help her with this situation.

37.   On or about October 24, 2003, Farb had another telephone conversation with Richard Miskiewicz and informed him that she needed to meet with him as soon as possible as the situation with Brown had worsened.  During this conversation, Mr. Miskiewicz informed Farb that his most convenient date for such a meeting was on November 4, 2003.

38.   On November 4, 2003, Farb met with Richard Miskiewicz and informed him of all of the aforementioned incidents.  Mr. Miskiewicz informed Farb that he would have to get back to her after he researched the proper protocol for handling such a situation.

39.   On or about November 6, 2003, Richard Miskiewicz called Farb to inform her, that since Brown was also a union member, he could not do anything for her, as he felt that there was a conflict of interest.  Mr. Miskiewicz then referred Farb to the School Administrator's Association of New York State's ("SAANYS") legal department for help resolving the situation.  Farb did contact SAANYS and upon doing so was told to seek private counsel.

40.   On or about December 15, 2003, Farb had a meeting in which she reported each of the aforementioned incidents to Jeffrey Hollman.

41.   On one occasion, shortly after Farb filed her complaint against Brown with the District, Brown approached Alvis Brown in the Baldwin Middle School parking lot and stated " I have to be careful in what I'm doing.  I can't even visit my sidepiece [girlfriend] because that bitch, Cheryl [Farb], probably has a P.I. [private investigator] following me.  It might even be her short-ass husband.  Who would sexually harass that ugly bitch with her fucked up teeth and bad breath?  If anything, she harassed me by the many times I caught her looking at my dick.  She is probably not

-9-

getting any from her husband."

42.  That at all times mentioned, Farb was and still is a highly qualified individual, whose intelligence and experience exceed the level of competency required for the position she held with the District.  Furthermore, Farb was a well-liked employee amongst her peers and was praised for her plethora of skills, including but not limited to her professionalism, organizational abilities, assertiveness, and ingenuity.

43.  All of the aforementioned incidents had a physical, mental, and/or emotional impact on Farb.

**FOR A FIRST CAUSE OF ACTION**
**SEXUAL AND RACIAL HARASSMENT AGAINST THE**
**SCHOOL DISTRICT AND THE BOARD OF EDUCATION**

44.  Farb was abused verbally and was victimized by derogatory, sexist, and racist remarks including, but not limited to each of the aforementioned incidents.

45.  The aforementioned remarks were made intentionally, wantonly, and maliciously by Brown in the presence of Guerrero, who did absolutely nothing about the inappropriate, racial and sexual remarks, and with the knowledge of the District, and collectively, form a pattern of sexual and racial harassment that is violative of Farb's rights under Title VII.

46.  Farb was regularly and wrongfully harassed about her job performance and matters out of her control.  Such matters were outside the scope of Farb's employment and were wrongfully used to harass and annoy her.

47.  Farb was regularly questioned about actions taken within the scope of her official duties of employment and forced to explain her reasoning for doing such.  The purpose of these meetings was to intimidate, annoy, and harass Farb and was part of an on-going campaign between Brown

and Guerrero to make Farb cry.

48.   One a number of occasions, Brown would intentionally and maliciously tell Farb and Alvis Brown conflicting information in an effort to cause conflict between Farb and Alvis Brown.

49.   Farb made a good faith effort to inform employees of the District, including but not limited to Brown and Guerrero, of statements and conduct that she felt was unwarranted and of which she objected and found offensive.  As part of this effort, Farb filed a sexual harassment complaint with the District against Brown, which is referenced above.

50.   The District, and specifically Brown and Guerrero, disregarded Farb's efforts to stop such conduct and failed to take any appropriate or sufficient action to resolve Farb's complaints.

51.   The District failed to conduct a sufficient investigation of the claims brought by Farb in her sexual harassment complaint against Brown, referenced above.  The report issued by Chapman on the findings of such investigation was erroneous and exemplifies the inadequacies of the District's inquiry into Farb's claims and constituted an attempt to cover-up or white-wash Farb's complaints and Brown's offensive, improper and harassing conduct.

52.   As part of the cover-up and with the intent to defuse and negate Farb's complaints. Chapman told Brown and Guerrero what he would be asking witnesses and informed Brown and Guerrero of the scope of his investigation and the course it would follow.

53.   Brown intentionally, purposefully and maliciously impeded, perjured and solicited to cover up the District's investigation of Farb's claims against him.  In undertaking these efforts, Brown met with Alvis Brown and told him that Chapman informed him of exactly what Chapman would ask him and exactly how he should respond to these questions.

54.   Guerrero intentionally, purposefully and maliciously impeded, perjured and solicited

to cover up the District's investigation of Farb's claims against Brown.  In undertaking these efforts and as part of the cover-up and to aid and abet Brown, Guerrero met with Denise Merchant, Special Education Chairperson, and other chairpersons and told them how to respond to Chapman's questions.

55.    As a result of these incidents, Farb has suffered personal injury, including but not limited to depression, insomnia, stress and anxiety.

56.    By virtue of the foregoing, Farb has been damaged in the amount of $2,500,000, together with pre-judgment interest from April 29, 2004.

**FOR A SECOND CAUSE OF ACTION**
**<u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST BROWN</u>**

57.    By virtue of all of the above, defendant Brown wilfully, maliciously and intentionally inflicted severe mental pain and anguish on Farb through a deliberate campaign of harassment and intimidation.

58.    Defendant Brown intentionally, willfully and recklessly permitted or aided or abetted in a deliberate campaign to threaten, intimidate, harass, demean and humiliate Farb for the intentional purpose of forcing Farb to resign.

59.    In or about Spring, 2004, while Farb was working her assigned lunch duty, Brown walked over to her and demanded that she give him a copy of her personal notes relating to a particular incident that had occurred at the school.  Responding to this request, Farb informed Brown that should would immediately make a copy of these notes and deliver them to his office.  Brown replied by stating "No, I want them right now."  Farb replied by stating that these were her personal notes and that their retention by her was necessary to follow up on the incident, but that she was more than willing to make copies for Brown.  In response, Brown yelled, "You are defying my

request.  Well, I'll have to inform [Dr.] Kathy [Weiss] about your insubordination."  Brown then

sought out Alvis Brown and stated to him, "That bitch has spoken back to me for the last time, watch

this!"  Brown then proceeded to speak over a public walkie-talkie and summoned each security

officer in the building, by name, to report to the area of the building where Farb was posted.  Brown

then turned to security officer Paul Amos and Alvis Brown and began to laugh hysterically at the

fact that Brown had caused Farb to believe that the security officers were reporting to her location

in order to escort her out of the building for her "insubordination."  Such action was undertaken with

the specific intent of causing Farb extreme emotional distress and in the presence of staff and

students.

60.   As past of her employment duties and specifically, her disciplinary responsibilities, Farb

often has to speak with the security guards at Baldwin Middle School.  On a number of occasions,

when Farb had an issue with one of these security guards, Brown told Alvis Brown to encourage

these security personnel to write up the incidents so that the reports could go into Farb's personnel

file.  On other occasions, when similar issues arose between other staff members and security aides,

Brown merely told Alvis Brown to "smooth it over," and did not tell Alvis Brown to engage in the

same behavior as he was told to do in relation to Farb.  When a report is placed in an employee's

file, it is a drastic measure reserved for serious incidents.  As such, Brown's intentional behavior

towards Farb was meant to cause her extreme emotional distress and was undertaken within Brown's

deliberate campaign to terminate her.

61.   On one occasion, Farb received information from Brown regarding an incident at the

school in which a digital camera had been stolen.  Brown presented Farb with this information at

approximately 2:50 P.M. and demanded results prior to the departure of the students.  The school

day ends for students at 3 P.M., at which time the students get on their respective buses and go home. Immediately after receiving this information from Brown, Farb received information through an alternate source that a group of female students may have information regarding the theft. The students were quickly gathered up and Farb individually and privately asked them three brief questions in order to determine whether they had any relevant information. Upon determining that they did not, Farb allowed the students to depart her office so that they would not miss their respective buses. The parents of these students called Weiss to complain about the questioning of their children. Brown yelled at and belittled Farb for this incident. Farb was reprimanded by Weiss for this incident and a letter was placed in Farb's permanent personnel file for this incident although Farb's actions were within the scope of her duties and authority and were done in furtherance of Brown's direction to investigate this situation.

62. Brown intentionally wanted the end result of the preceding incident to occur and Farb was summoned into Weiss' office, where she was reprimanded, belittled and demeaned by Weiss and a letter of reprimand was placed in Farb's permanent, personal record. Brown stood by while this was occurring and never offered the truth or attempted to defend Farb.

63. On one occasion, before entering a meeting, Brown told Alvis Brown that he was going "to beak her [Farb] down" in the meeting. Brown did this in response to an earlier confrontation between Farb and Brown in which Brown felt that Farb had "talked down" to him and, after which, Brown told Alvis Brown that Farb had talked down to him, "like he was a nigger or something beneath her." At the meeting, with Guerrero also present along with Brown, Farb and Alvis Brown, Brown relentlessly verbally assaulted Farb and in an uncontrollable tirade did not stop until Farb was uncontrollably crying. After said meeting, Brown, Guerro and Alvis Brown went back to

Brown's office.  Immediately upon entering the office, Brown and Guerrero began laughing hysterically and Brown proudly stated that he had made Farb cry and how funny it was that, while she tried to hold back her tears, she [Farb] could not.

64.   Brown and Guerrero had an ongoing contest to see who could bring Farb to tears and how long it would take to make her cry.  Such incidents reflect an intent to cause severe emotional distress and was undertaken within Brown's deliberate campaign to terminate Farb.

65.   Defendant's conduct as related to Farb in these and the aforementioned incidents in the allegations common to all causes of action, was such that he knew that severe emotional distress would be certain or substantially certain to result, and in fact, engaged in the acts specifically with the intent to cause distress in an effort to achieve ulterior motives.  Such conduct was so malicious that it rises to a level that goes beyond all bounds of decency in a civilized society.

66.   As a  result of the utterly vicious and incomprehensible nature of the action taken against Farb and the resulting steps taken to terminate her in the months that followed, Farb suffered a level of distress that rose to a level such that no reasonable person could be expected to endure.

67.   By virtue of the foregoing, Farb has been damaged in the amount of $2,500,000.00, together with pre-judgment interest from April 29, 2004 and seeks judgment against Brown.

### FOR A THIRD CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST BROWN

68.   By virtue of all of the aforesaid, defendant Brown's conduct was so atrocious and malicious that a reasonable person would have known that its effect was such as to cause Farb extreme emotional distress.

69.   The effect of such negligent behavior toward Farb, inflicted through Brown's intentional and deliberate campaign of  harassment, caused an end result that rose to a level that goes

beyond all bounds of decency in a civilized society.

70.   As a result of the utterly vicious and incomprehensible nature of the action taken against Farb and the resulting steps taken to terminate her in the months that followed, Farb suffered such distress that the conduct and actions rose to a level such that no reasonable person could be expected to endure.

71.   By virtue of the foregoing, Farb has been damaged in the amount of $2,500,000.00, together with pre-judgment interest from April 29, 2004 and seeks judgment against Brown.

## FOR A FOURTH CAUSE OF ACTION
## HOSTILE WORK ENVIRONMENT

72.   By virtue of all of the above, defendants Brown, Chapman and Guerrero's actions and the results arising from such actions served to create and did create a hostile work environment.

73.   As a result of defendants' actions, the workplace at Baldwin Middle School was permeated with discriminatory intimidation that was sufficiently severe and pervasive to alter the conditions of Farb's work environment.

74.   Upon information and belief, including but not limited to statements form other Baldwin Middle School employees, a specific basis exists for imputing the conduct that created the hostile work environment.

75.   By virtue of the foregoing, Farb has been damaged in the amount of $2,500,000.00, together with pre-judgment interest from April 29, 2004.

## FOR A FIFTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH CONTRACT

76.   The District had a valid and enforceable contract with Farb.

77.   The defendants were aware of the existence of the said contract with Farb.

-16-

78.   Pursuant to the terms and conditions of the said agreement, the District intentionally and maliciously breached the contract by discharging Farb without just cause.

79.   Farb was a hard working employee who was praised by her peers for both her knowledge and skill.

80.   Farb made every intention and good faith effort to correct the alleged complaints against her and perform her duties as effectively as possible.

81.   Defendants' complaints were highly egregious, utterly fabricated and devised with the intention of carrying out a planned scheme to deny Farb of her employment.

82.   As a result of Farb's termination, the contract was actually breached by the defendants.

83.   By virtue of the foregoing, Farb has been damaged in the amount of $2,500,000.00, together with pre-judgment interest from April 29, 2004.

## FOR A SIXTH CAUSE OF ACTION
## ON BEHALF OF HAROLD R. NEWMAN AGAINST BROWN

84.   At all material times herein mentioned, Newman was and still is the lawful husband of Farb, and they did and still continue to reside together as husband and wife.

85.   That by reason of the aforesaid injuries sustained by his wife, Newman has suffered a loss of consortium and has been deprived of the services of his wife and the comfort and happiness of her affection and society.

86.   Upon information and belief, the said deprivation and impairment will necessarily continue indefinitely.

87.   By virtue of the foregoing, Newman has been damaged in the amount of $750,000.00 and seeks judgment against Brown.

## RELIEF SOUGHT

WHEREFORE, plaintiffs request judgment against the defendants as follows:

(a) Money damages in the amount of $2,500,000.00, together with pre-judgment interest on the Title VII claims against the District and Board of Education, jointly and severally;

(b) Money damages in the amount of $2,500,000.00 together with pre-judgment interest on the claims asserted under and by virtue of 42 U.S.C. §§1981 and 1983 against all defendants, jointly and severally except for defendant Weiss;

(c) Money damages in the amount of $2,500,000.00 together with pre-judgment interest only against Brown for the intentional infliction of emotional distress;

(d) Money damages in the amount of $2,500,000.00 together with pre-judgment interest only against Brown for the negligent infliction of emotional distress;

(e) Money damages in the amount of $750,000.00 together with pre-judgment interest only against Brown for Newman's loss of consortium;

(f) Punitive Damages against the defendants except Weiss in an amount to be determined by the trier of the facts;

(g) Reasonable counsel fees and all the costs and disbursements of the action; and

(h) for such other and further relief as to the court may seem just and proper.

## PLAINTIFFS DEMAND A TRIAL BY JURY

Dated: Melville, New York
      March 30, 2006

_____
 FRED P. BENNETT (FB9059)
 Attorney for Plaintiffs
1800 Walt Whitman Road, Ste. 100
Melville, New York 11747
(631-694-6424)

TO: RUTHERFORD & CHRISTIE, LLP
     300 East 42nd Street
     18th Floor
     New York, New York 10017-5947
     (212) 599-5799