UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
CHERYL E. FARB, HAROLD R. NEWMAN,

                    Plaintiffs,

          -against-                              MEMORANDUM & ORDER
                                                05-CV-0596 (JS)(ETB)

BALDWIN UNION FREE SCHOOL DISTRICT,
BALDWIN UNION FREE SCHOOL DISTRICT
BOARD OF EDUCATION, JAMES BROWN,
in his official capacity as Principal
and individually, ARLENE GUERRERO,
in her official capacity as Assistant
Principal and individually, and DR.
LEE CHAPMAN, in his former official
capacity as Deputy Superintendent
and individually,

                    Defendants.
------------------------------------X
APPEARANCES:
For Plaintiffs:          Rick Ostrove, Esq.
                         Leeds Morelli & Brown
                         One Old Country Road, Suite 347
                         Carle Place, NY 11514

For Defendants:          Lewis R. Silverman, Esq.
                         Samantha Velez, Esq.
                         Rutherford & Christie, LLP
                         369 Lexington Avenue, 8th Floor
                         New York, NY 10017-5947

SEYBERT, District Judge:

          Presently before the Court are Defendants' post-verdict

motions for judgment as a matter of law pursuant to Fed. R. Civ. P.

50(b) and for a new trial pursuant to Fed. R. Civ. P. 59.  For the

reasons stated below, Defendants' motions are GRANTED in part and

DENIED in part.

BACKGROUND

This action stems from Plaintiff Cheryl Farb's ("Farb") employment as, and termination from, the position of Dean of Students for the Baldwin Middle School. Farb alleges that during her employment, Defendant James Brown ("Brown"), then Principal of the school, made numerous sexually and racially suggestive and derogatory comments either to Farb or in her presence. According to Plaintiff, Defendants failed to take appropriate action to resolve Farb's complaints and instead retaliated against Plaintiff by terminating her employment.

On February 2, 2005, Farb and her husband, Harold R. Newman ("Newman") (collectively, Plaintiffs), filed a Complaint against Brown, the Baldwin Union Free School District ("District"), the Baldwin Union Free School District Board of Education ("Board"), Arlene Guerrero, Dr. Kathy Weiss, and Dr. Lee Chapman (collectively "Defendants"), alleging racial and sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e-2000e-17 (2000) ("Title VII"), intentional infliction of emotional distress, negligent infliction of emotional distress, defamation, a hostile work environment,[1] "retaliatory

_____

[1] Plaintiffs' Complaint certainly was not a model of clarity. Although several purported causes of action are listed for harassment and hostile work environment, it appears that Farb intended to state one cause of action for sexual harassment hostile work environment and one cause of action for racial harassment hostile work environment. There are no allegations with respect to quid pro quo sexual harassment; thus, the

personnel action by a public employer for whistleblowing,[2] tortious interference with contract, respondeat superior, and loss of consortium on behalf of Newman.

On April 5, 2005, Plaintiffs consented to change their attorney from Thomas F. Liotti, Esq., to Fred P. Bennett, Esq. On March 3, 2006, this Court issued an Order granting Defendants' motion to dismiss and dismissing some of Plaintiffs' claims. Thereafter, on March 30, 2006, Plaintiffs filed an Amended Complaint. The Amended Complaint alleged a cause of action for sexual and racial harassment in violation of Title VII, intentional infliction of emotional distress against Brown, negligent infliction of emotional distress against Brown, hostile work environment, tortious interference with contract, and loss of consortium on behalf of Newman. Notably, the Amended Complaint did not state a cause of action for retaliation. Oddly, in the parties joint pretrial order, Plaintiffs stated, "Under Title VII plaintiffs are seeking damages based on . . . retaliation for plaintiff Cheryl E. Farb's filing of a formal complaint and grievance based initially on sexual harassment against defendant James E. Brown and the retaliation by defendants creating a hostile

_____

Complaint's separate claims for sexual harassment and hostile work environment based on sexual harassment were unnecessarily duplicative.

[2] The Complaint did not clarify which statute Farb intended to bring her retaliation claim under.

work environment leading to the eventual termination of plaintiff Cheryl E. Farb's employment." (JPTO pg 2.) The JPTO did not mention a separate cause of action for retaliation under any other statute.

On July 30, 2008, Plaintiffs again consented to change their attorney, from Fred Bennett, Esq. to Rick Ostrove, Esq, who remained counsel of record throughout the trial. On May 6, 2009, a jury found that the Defendant School District did not subject Plaintiff Farb to a hostile work environment in violation of Title VII and did not violate Farb's right to equal protection of the law under Section 1983. However, the jury found in favor of Plaintiff Farb on her Title VII retaliation claim against the School District. Additionally, the jury found that none of the individually-named Defendants infringed Farb's constitutional rights in violation of Section 1983, but found that Defendant Brown intentionally inflicted emotional distress on Plaintiff Farb. As a result, the jury awarded Farb $4 million in compensatory damages against Defendants, and $1 million in punitive damages against Defendant Brown. Plaintiff Newman received $250,000 against Defendant Brown for his loss of consortium claim. Presently before the Court are Defendants' post-verdict motions for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) and for a new trial pursuant to Fed. R. Civ. P. 59.

I.    <u>Standard of Review</u>

Federal Rule of Civil Procedure 50(a) permits a party to move for judgment as a matter of law prior to the submission of the case to the jury and requires that such a motion "specify the judgment sought and the law and the facts on which the moving party is entitled to judgment."  Rule 50(b) provides that if the Court does not grant the 50(a) motion, the case is deemed submitted to the jury subject to the Court's later deciding the legal questions raised by the motion and permits renewal of the request for judgment by motion within ten days after the entry of judgment. Thus, the post-judgment Rule 50 motion is merely a renewal of the motion made prior to the submission of the case to the jury, and therefore, is limited to the grounds raised by the losing party in that motion.  <u>Lambert v. Genesee Hospital</u>, 10 F.3d 46, 53-54 (2d Cir. 1993).  At the conclusion of all the evidence, the District Defendants moved for judgment as a matter of law on the issue of procedural due process and therefore that issue is properly before the Court.

A judgment as a matter of law is "reserved for those rare occasions when there is 'such complete absence of evidence supporting the verdict that the jury's finding could only have been the result of sheer surmise and conjecture' or the evidence must be so overwhelming that reasonable and fair minded persons could only have reached the opposite result."  <u>King v. Macri</u>, 800 F. Supp.

1157, 1160 (S.D.N.Y. 1992) (quoting <u>Sorlucco v. New York City Police Dep't</u>, 971 F.2d 864, 871 (2d Cir. 1992)). The court must view the evidence most favorably to the non-movant, and then only if one conclusion as to the verdict could have been reached by reasonable persons, in favor of the movant, should the court grant judgment as a matter of law. <u>See</u> <u>Weldy v. Piedmont Airlines, Inc.</u>, 985 F.2d 57, 59-60 (2d Cir. 1993). The court should not substitute its own factual assessment of the evidence for the jury's, rather, it should decide whether reasonable persons could not have arrived at the same conclusion as the jury.

In contrast, a motion under Rule 59 may be granted when "the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice." <u>DLC Management Corp. v. Town of Hyde Park</u>, 163 F.3d 124, 133 (2d Cir. 1998) (quotation and ellipses omitted). In other words, a new trial may be granted if the jury's verdict is against the weight of the evidence. <u>Id.</u> This standard permits a district court judge to weigh the evidence, and does not require the judge to view the evidence in the light most favorable to the non-movant. <u>Id.</u> at 134. "Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict. Moreover, a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner." <u>Id.</u> Nevertheless, a Rule 59 motion should be granted only "when the jury's verdict is

'egregious.'" Id. (quoting Dunlap-McCuller v. Riese Org., 980 F.2d 153, 158 (2d Cir. 1992)).

II.    Defendants' Motion

    A.    Intentional Infliction of Emotional Distress

        Defendants argue that the jury verdict for intentional infliction of emotional distress should be set aside and judgment should be granted in favor of Defendants as a matter of law because the evidence at trial did not show that Defendant Brown's conduct was extreme and outrageous.  The Court disagrees.

        To prevail on an intentional infliction of emotional distress claim, a plaintiff must "prove the following four elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal relationship between the conduct and the resulting injury; and (4) severe emotional distress." Minton v. Lenox Hill Hosp., 160 F. Supp. 2d 687, 698 (S.D.N.Y. 2001).  To satisfy the standard, the conduct must be "so outrageous  in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Murphy v. American Home Products Corp., 58 N.Y.2d 293, 303, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983).  Traditionally, New York courts have been very strict in applying these elements, and set a high threshold for conduct that is "extreme and outrageous" enough to satisfy the cause of action. Smalls v. Allstate Insurance Co., 396 F. Supp. 2d

364, 375 (S.D.N.Y. 2005).

The Court finds that, even under the high threshold for such claims, a reasonable jury could find that Defendant Brown intentionally inflicted emotional distress upon Plaintiff Farb, and could reasonably have determined that there was a casual relationship between Brown's conduct and Farb's injuries. The evidence at trial revealed that Defendant Brown made several inappropriate and derogatory comments toward Plaintiff Farb, belittled and criticized Plaintiff, and instructed subordinates to harass Plaintiff. Brown's harmful conduct occurred on more than one isolated incident, and, in fact, spanned over the course of approximately seven months. Viewing this evidence in a light most favorable to Plaintiff Farb, the Court finds that Defendants have not established that there is a complete absence of evidence supporting the jury's verdict with respect to the intentional infliction of emotional distress claim. See Funk v. F&K Supply, Inc., 43 F. Supp. 2d 205, 223 (N.D.N.Y 1999) (denying judgment as a matter of law in a sexual harassment case where evidence at trial was sufficient to support a finding that defendant intentionally inflicted emotional distress on plaintiffs).

Additionally, the Court finds that the jury's finding of liability with respect to Defendant Brown's intentional infliction of emotional distress is not inconsistent with its dismissal of Farb's hostile work environment claim. It is feasible to find that

8

Defendant Brown engaged in severe and pervasive conduct causing severe emotional distress, but that this similar conduct did not create liability for a hostile work environment claim because the District Defendants were not liable for the hostile environment.

    B.   <u>Retaliation</u>

       Defendants maintain that the evidence at trial was insufficient to support the jury's finding with respect to Plaintiff Farb's retaliation claim. Defendants argue that they are entitled to judgment as a matter of law or a new trial because Plaintiff failed to show that Defendants retaliated against her, and even if Farb established a prima facie case of retaliation, Defendants presented a legitimate non-discriminatory reason for Plaintiff Farb's termination. The Court disagrees.

       Title VII retaliation claims are analyzed under the <u>McDonnell Douglas</u> burden-shifting paradigm. <u>See</u> <u>Terry v. Ashcroft</u>, 336 F.3d 128, 141 (2d Cir. 2003). In order to establish a <u>prima facie</u> case of retaliation, a plaintiff must show that (1) he engaged in protected activity, (2) defendants were aware of this activity, (3) defendants took adverse action against the plaintiff, and (4) there exists a causal connection between the protected activity and the adverse action. <u>See</u> <u>Kessler v. Westchester County Dep't of Soc. Servs.</u>, 461 F.3d 199, 206 (2d Cir. 2006).

       The Court finds that there was sufficient evidence at trial to support the jury's finding with respect to Farb's

9

retaliation claim.   First, Farb established at trial that she engaged in a protected activity and that the District was aware of this activity.   Farb presented evidence that she complained to Dr. Lee Chapman, the Deputy Superintendent of the District, regarding Brown's conduct at least as early as December 19, 2003, and complained to Jeffrey Hollman, the Assistant Superintendent of the District, on December 15, 2003.   (Pls.' Ex. 37).   Next, Plaintiff Farb was terminated, and the termination occurred not too long after her complaints to the Assistant Superintendent and Superintendent.   Thus, there was sufficient evidence at trial to support the jury's finding of a prima facie case of retaliation.

Defendants argue that even if Plaintiff established a prima facie case of retaliation, the Board presented sufficient evidence at trial to show that it terminated Farb because of her less than satisfactory job performance.  However, even if the jury found that Defendants satisfied their burden with respect to showing a non-discriminatory basis for Plaintiff's termination, the Court finds that there was sufficient evidence for the jury to find pretext.   Plaintiffs presented evidence that Farb was well-liked and an effective Dean.   In sum, in reviewing the evidence, the Court cannot find that Defendants are entitled to a  new trial because the jury reached a seriously erroneous result or the verdict is a miscarriage of justice, and certainly cannot find that there was such a complete absence of evidence supporting the

10

verdict that the jury's finding could only have been the result of sheer surmise and conjecture.

    C.   <u>Jury Award Against the School District</u>

       Defendants argue that the damages awarded against the School District should be reduced because there is a statutory cap for compensatory damages under Title VII and because the damages are unreasonable and not supported by the evidence introduced at trial. The Court agrees.

       The jury found against the Defendant School District only with respect to Plaintiff Farb's Title VII retaliation claim. Notably, a claim of retaliation did not appear anywhere in Plaintiff's Amended Complaint. However, after listening to the evidence presented at trial, the Court determined that the jury should be charged with respect to a retaliation claim.[3] The Court informed the parties that in its opinion, this was "[i]n essence, . . . a case of retaliation." (Tr. May 5, 2009 1138). Interestingly, counsel for Plaintiffs responded that he did not "necessarily agree with that statement." (<u>Id.</u>) However, Plaintiffs' counsel did agree with what was contained in the jury charge, and stated that he "[did not] have an exception [to] the way the charge [was]." (<u>Id.</u> 1139.) Thus, the jury was asked to

---

     [3] Prior to charging the jury, the Court stated, "I think we are all in agreement that although the term "retaliation" wasn't explicitly stated in the complaint, it could be inferred, and the defendants have taken that position." (Tr. May 5, 2009, 1139.) Counsel for Defendants responded in the affirmative.

deliberate a Title VII retaliation claim, in accordance with the evidence presented at trial and the parties' JPTO.

Although the jury awarded $4 million in compensatory damages to Plaintiff Farb, Title VII imposes a $300,000 cap on the "amount of compensatory damages awarded . . . for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages" against an employer with more than 500 employees. See 42 U.S.C. § 1981a(b)(3)(D). "The statutory cap is properly excluded from jury instructions, and only after a verdict is submitted, the trial court must ensure that any award complies with the relevant statutory maximums applicable." Parrish v. Sollecito, 280 F. Supp. 2d 145, 155 (S.D.N.Y. 2003). Because Plaintiff received a compensatory damages award well in excess of the statutory cap, the Court must reduce Plaintiff Farb's compensatory damages award against the District Defendants for her Title VII retaliation claim to $300,000.[4]

However, in addition to Plaintiff Farb's Title VII retaliation claim, the jury found in favor of Plaintiff on her intentional infliction of emotional distress claim against Defendant Brown. The jury was asked to award one monetary sum for

_____

[4] Although there are other anti-discrimination statutes that do not impose a statutory cap on compensatory damages, such as the New York State Human Rights Law, as above noted, Plaintiff Farb only asserted a claim of retaliation under Title VII.

12

Plaintiff Farb's compensatory damages, which represented the total amount of compensatory damages for the injuries Plaintiff Farb suffered as a result of the District Defendants' Title VII violation and Defendant Brown's intentional infliction of emotional distress. This comports with New York State law, which recognizes that "intentional infliction of emotional distress is a theory of recovery that is to be invoked only as a last resort." McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc., 256 A.D.2d 269, 270 (N.Y. App. Div. 1st Dep't 1998). In this case, Plaintiff Farb suffered the same emotional harm from Defendant Brown's intentional infliction of emotional distress and the District Defendants retaliatory discharge. Thus, because Plaintiff is not entitled to double recovery, the jury was not asked to award separate compensatory damages for Plaintiff Farb's intentional infliction of emotional distress claim and the Title VII claim. See id. ("[T]here is no reason to apply the [intentional infliction of emotional distress] theory where an applicable statute expressly provides for the recovery of damages for emotional distress.").

"Title VII does not relieve a defendant from liability and the award of damages under state law where a jury has found such a violation under both laws pursuant to the charge of the Court given without exception." Luciano v. Olsten Corp., 912 F. Supp. 663, 675 (E.D.N.Y. 1996). Here, Plaintiff Farb's compensatory damages stemmed not only from the District Defendant's

13

Title VII liability, but also from Defendant Brown's tort liability. "In determining allocation in such instances, courts have adopted the sensible approach, consistent with Circuit preference, . . . that the jury award be allocated under the liability theory that provides plaintiff the most complete recovery." Funk v. F&K Supply, Inc., 43 F. Supp. 2d 205, 225 (N.D.N.Y 1999); see also Anderson v. YARP Restaurant, 1997 U.S. Dist. LEXIS 560 (S.D.N.Y. Jan. 22, 1997) (interpreting jury award in a manner permitting "plaintiff to receive the full amount awarded by the jury without exceeding the legal limits placed upon sexual harassment claims under Title VII."); Bick v. City of New York, 1998 U.S. Dist. LEXIS 5543, 63-64 (S.D.N.Y. Apr. 21, 1998) ("The solution lies in the fact that Title VII was not intended to preclude a plaintiff from recovery under state law, . . . and that the Second Circuit has endorsed the notion of permitting a successful plaintiff to recover under the theory of liability that provides the most complete recovery.") (internal citations and quotations omitted).

Thus, the Court must determine whether the compensatory damages award is excessive for Farb's intentional infliction of emotional distress claim. "A federal court, in reviewing the amount of damages awarded on a state law claim, must apply New York law." Patterson v. Balsamico, 440 F.3d 104, 119 (2d Cir. N.Y. 2006). Under New York State law, a court reviewing a damages award

14

"'shall determine that an award is excessive or inadequate if it deviates materially from what would be reasonable compensation.'" Id. (quoting N.Y. C.P.L.R. § 5501(c).

"In determining whether a particular award is excessive, courts have reviewed awards in other cases involving similar injuries, 'bearing in mind that any given judgment depends on a unique set of facts and circumstances.'" Scala v. Moore McCormack Lines, Inc., 985 F.2d 680, 684 (2d Cir. 1993) (quoting Nairn v. Nat'l R.R. Passenger Corp., 837 F.2d 565, 568 (2d Cir. 1988). The Court finds that Plaintiff Farb's damages award is in excess of the severity of her emotional distress.

While it is true that Plaintiff Farb described her injuries in more than vague and conclusory terms, and introduced evidence at trial that she suffered from stress, anxiety, nausea, and nightmares, the Court nonetheless finds that an award of $4 million is excessive and deviates materially from what would be reasonable compensation.  In arriving at this conclusion, the Court has reviewed jury verdicts in similar cases.  See Patterson v. Balsamico, 440 F.3d 104, 119 (2d Cir. 2006) (upholding award of $100,000 in compensatory damages on the state law claims of intentional infliction of emotional distress for plaintiff who offered testimony "his humiliation, embarrassment, and loss of self-confidence, as well as testimony relating to his sleeplessness, headaches, stomach pains, and burning in his eyes

from the use of mace in [an] attack" against the plaintiff");
Ramirez v. New York City Off-Track Betting Corp., 112 F.3d 38, 40
(2d Cir. 1997) (district court appropriately found that pain and
suffering award should be reduced from $1,145,625 to $500,000 for
plaintiff whose "psychiatric difficulties . . . become so severe
after his discharge that he was in effect unemployable."); Anderson
v. YARP Restaurant, 1997 U.S. Dist. LEXIS 560 (S.D.N.Y. Jan. 22,
1997) ($65,000 for plaintiff who suffered from "powerlessness,
panic attacks, trouble sleeping, and difficulty maintaining
employment" as a result of sexual harassment.); Sorrenti v. City of
New York, 851 N.Y.S.2d 61 (N.Y. Sup. Ct. 2007) ($491,706.00 for
plaintiff who suffered "episodes of suicidal ideation . . . major
reactive depression and [had an] ongoing need for psychotropic
medication" in a case involving sexual orientation discrimination
and retaliation).   In reviewing these cases, and the evidence
presented at trial, the Court finds that an award of $500,000 in
compensatory damages more than adequately compensates Plaintiff
Farb for her emotional harm.   In light of the statutory cap on
compensatory damages under Title VII, the Court allocates $300,000
to Plaintiff Farb's Title VII claim against the District and
$200,000 to her intentional infliction of emotional distress claim
against Defendant Brown to maximize Plaintiff Farb's recovery.

    C.   Punitive Damages Against Defendant Brown

        Defendant Brown argues that a punitive damages award of

16

$1 million against him is excessive and must be reduced.  The Court agrees.

"[P]unitive damages are an extraordinary sanction." Hughes v. Patrolmen's Benevolent Ass'n, 850 F.2d 876, 883 (2d Cir. 1988).  "Under New York law, whether to award punitive damages and how much to award are 'primarily questions which reside in the sound discretion of the original trier of the facts.'" Greenbaum v. Svenska Handelsbanken, 67 F. Supp. 2d 228, 267 (S.D.N.Y. 1999) (quoting Nardelli v. Stamberg, 44 N.Y.2d 500, 503, 406 N.Y.S.2d 443, 377 N.E.2d 975 (1978)).  In reviewing a punitive damages award, courts consider factors such as "whether the punitive damages are reasonably related to the harm done and the flagrancy of the conduct" and the " wealth of the defendant, . . . because . . . punitive damages are meant to punish and deter defendants and others from similarly willful or outrageous misconduct." Id. (internal citations and quotation marks omitted).  The Supreme Court has set forth the following guidelines in considering whether a punitive damages award is reasonable: "(1) the degree of reprehensibility of the tortious conduct; (2) the ratio of punitive damages to compensatory damages; and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases." Lee v. Edwards, 101 F.3d 805, 809 (2d Cir. 1996) (citing BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S. Ct. 1589, 134 L. Ed. 2d 809).

Defendant Brown argues that the punitive damages award should be set aside particularly in light of the fact that "the plaintiff has submitted no evidence of defendant [Brown's] financial condition" and thus the "Court lacks the ability to determine whether it would be necessary or advisable to award any punitive damages in this case." (Defs.' Mem pg 11.) However, "[t]he incompleteness of the record as to [the defendant's] net worth is not a basis for reducing the punitive damages award against him, for it is the defendant's burden to show that his financial circumstances warrant a limitation of the award." Smith v. Lightning Bolt Prods., 861 F.2d 363, 373 (2d Cir. 1988). Here, Defendants have presented absolutely no evidence regarding Defendant Brown's financial status and his inability to sustain a punitive damages award.

While Brown certainly engaged in reprehensible conduct by ridiculing and undermining Plaintiff Farb, the Court, in reviewing the Gore factors, finds that a one million dollar punitive damages award is not reasonably related to the harm done. Additionally, the Court has reviewed punitive damages awards in similar cases and finds that an award of $1 million against Brown is egregious. See Hughes v. Patrolmen's Benevolent Ass'n, 850 F.2d 876, 879 (2d Cir. 1988) (punitive damages of $175,000 in case involving intentional infliction of emotional distress and prima facie tort); Lynch v. County of Nassau, 278 A.D.2d 205 (N.Y. App.

18

Div. 2d Dep't 2000) ($100,000 punitive damages award remitted to $50,000 against an individual defendant in a case involving malicious prosecution, intentional infliction of emotional distress, and false arrest.); but see McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc., 682 N.Y.S.2d 167, 169 (N.Y. App. Div. 1st Dep't 1998) (punitive damages of $1,500,000 against corporate defendant in a case involving findings of sexual harassment, retaliatory discharge, and intentional infliction of emotional distress).  Here, the Court finds that $500,000 is sufficient to punish Brown and deter others from engaging in similar conduct in the future.

However, "a court may not simply reduce an award of punitive damages, but must offer the plaintiff the option of a new trial on that issue." Vasbinder v. Scott, 976 F.2d 118, 122 (2d Cir. 1992).  Thus, the Court grants Defendants a new trial on the issue of damages unless Plaintiff Farb accepts a remittur reducing the jury's damages to $500,000 for Plaintiff Farb's compensatory damages and $500,000 in punitive damages against Defendant Brown.[5]

CONCLUSION

For the reasons stated above, Defendants' motion for judgment as a matter of law is DENIED and Defendants' motion for a new trial is DENIED in part and GRANTED in part.  Defendants are

---

[5] Neither party disputes the jury's $250,000 award for Plaintiff Newman's loss of consortium claim, and thus that award remains unaffected by this Order.

granted a new trial on the issue of damages unless Plaintiff Farb accepts a remittur reducing the jury's damages to $500,000 for Plaintiff Farb's compensatory damages and $500,000 in punitive damages against Defendant Brown.  Plaintiffs are directed to inform the Court of their decision by February 12, 2010.


                                SO ORDERED.


                                /s/ JOANNA SEYBERT_____
                                Joanna Seybert, U.S.D.J.

Dated:      February __3__, 2010
            Central Islip, New York

20